**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THE UBU CLOTHING CORPORATION, | CIVIL ACTION NO. 3:11-CV-910 |
| Plaintiff, | |
| | (JUDGE CAPUTO) |
| ROBERT FOREHAND and JISAN GROUP, LLC | |
| Defendants. | |

**MEMORANDUM**

Presently before the Court is the Defendants' Motion to Dismiss / Motion to Transfer (Doc. 9), of Plaintiff's Amended Complaint, (Doc. 5). This action stems from an alleged breach of contract between a Pennsylvania corporation and two New Jersey Defendants. In their Motion before the Court, the Defendants claim that venue in the Middle District of Pennsylvania is improper, contending that the only proper venue is the Southern District of New York. For the reasons stated below, the Court agrees that venue is improper and will grant the Defendants' Motion to Dismiss / Motion to Transfer in so far as the action will be transferred to the Southern District of New York.

**I. BACKGROUND**

Plaintiff UBU Clothing Company ("UBU") is a distributor of women's apparel incorporated in Pennsylvania, with a principal place of business in Forty Fort, Pennsylvania. Defendant Robert Forehand is a citizen of New Jersey, while Defendant Jisan Group, LLC is a Delaware limited liability corporation with a principal place of business in New York, New York. However, as "the citizenship of an LLC is determined by the citizenship of its members," *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010), Jisan

Group is a citizen of New Jersey as all members of the Group are citizens of New Jersey. (Doc. 1-2 at 2, Ex. B).

Defendants removed this action from the Court of Common Pleas of Luzerne County on May 12, 2011, alleging diversity jurisdiction pursuant to 28 U.S.C. § 1332. After filing a Motion to Dismiss on May 19, 2011 (Doc. 2), Plaintiff thereafter attempted to cure several of the contested defects through the filing of an Amended Complaint. (Doc. 5). The Court notes that the filing of this Amended Complaint was technically improper as it was not timely and the Court did not grant leave to amend. However, as the Amended Complaint significantly narrows the issues between the parties, the Court will exercise its discretion in allowing leave for this Amended Complaint. As such, the Court will deem the original Motion to Dismiss as moot (Doc. 2), and will proceed solely as to the Second Motion to Dismiss, (Doc. 9).

UBU retained the Jisan Group to assist with its outsourcing to China, specifically to "better control production, quality and distribution" of their product. (Am. Compl. at ¶ 9, Doc. 5). As such, Plaintiff alleges that "Robert Forehand and/or Jisan Group, LLC . . . are brokers/agents who deal directly with factories, quality control specialists and others in China to facilitate the manufacturing, coordinate shipping and assure quality control of clothing." (*Id.* at ¶ 4). Plaintiff claims that this relationship began with a sit-down meeting at its Pennsylvania headquarters, but that "Defendant Forehand made many trips to Pennsylvania to work with [UBU]." (Doc. 12 at 2). However, they also aver that "[m]uch of the critical work was done by both parties in Pennsylvania and New [Y]ork at their respective locations simultaneously via telecommunications and post." (*Id.* at 4).

The Amended Complaint alleges a sole breach of contract claim. The extent of a written contract between the parties appears limited to the terms of a May 5, 2010 email from the Defendants to the Plaintiff, apparently codifying the terms discussed between the parties at an unspecified meeting in Pennsylvania. (Am. Compl. at ¶ 16, Doc. 5). Pursuant to the alleged agreement, Plaintiff is seeking to recover from Defendants $27,458.52 in money advanced against future commissions, and $148,619.83 for defective inventory, for a total breach of contract claim of $176,078.38.

In their Motion, the Defendants claim that venue is improper in the Middle District of Pennsylvania as the only proper venue for this action is the Southern District of New York. (Mot. at ¶ 13, Doc. 9). As such, they are seeking dismissal pursuant to Federal Rules of Civil Procedure Rule 12(b)(3), or, in the alternative, transfer of the action "to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). For the reasons stated below, the Court will grant the Motion to Transfer, but will deny the Defendants' Motion to Dismiss.

## II. DISCUSSION

### A. Legal Standard

Federal Rule of Civil Procedure Rule 12(b)(3) provides for Motions to Dismiss based on improper venue. Where an action is deposited in an incorrect venue, 28 U.S.C. § 1406(a) directs a district court to dismiss such a case, "or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); *Lafferty v. Gito St. Riel*, 495 F.3d 72, 77 (3d Cir. 2007). The Supreme Court has noted "that 'the interest of justice' may require that the complaint not be dismissed but

3

rather that it be transferred in order that the plaintiff not be penalized by what the late Judge Parker aptly characterized as 'time-consuming and justice-defeating technicalities.'" *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962) (quoting *Internatio-Rotterdam, Inc., v. Thomsen*, 218 F.2d 514, 517). Before determining whether such transfer might be proper under Section 1406, a court must make a threshold determination that the current venue is improper, and the burden is generally on the defendants to show that it is such. *Myers v. Am. Dental Assoc.*, 695 F.2d 716, 724-25 (3d Cir.1982).

The requirements for venue based on diversity jurisdiction are set out in 28 U.S.C. § 1391. Specifically:

> (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391.

Previously, Section 1391 required that venue be situated in the district "in which the claim arose," but it was relaxed in 1990 to allow venue where "a substantial part of the events or omissions giving rise to the claim occurred," making it "absolutely clear . . . that there can be more than one district in which a substantial part of the events giving rise to the claim occurred." 14D Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3806.1 at 201 (3d ed. 2011). However, "[e]vents or omissions that might only have some tangential connection with the dispute in litigation are not enough. Substantiality

4

is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute." *Cottman Transmission Sys. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994).  In considering such substantiality, a court shall proceed by "assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts.'" *Leone v. Cataldo*, 574 F.Supp.2d 471, 484, (E.D. Pa. 2008) (citing *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005)).  In a contract claim, "the factors that courts tend to focus on include: where the contract was negotiated or executed, where the contract was to be performed, and where the alleged breach occurred."  Wright & Miller, *supra*, at 205-12.

### B. Whether Venue is Proper in the Middle District of Pennsylvania

In determining whether the Middle District of Pennsylvania is an appropriate venue for this action, the Court must consider whether "a substantial part of the events or omissions giving rise to the claim occurred," within this judicial district.  28 U.S.C. § 1391(a)(2).  Since no Defendant lives in Pennsylvania, Section 1391(a)(1) is inapplicable, and since venue would be proper elsewhere, namely New Jersey where all the Defendants reside,[1] Section 1391(a)(3) is similarly inapplicable.

Looking to Section 1391(a)(2), "[t]he test for determining venue is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim.'" *Cottman Transmission Sys. v. Martino*, 36 F.3d 291, 294 (3d Cir.

---

[1] In their Notice of Removal, Defendants correctly note that "[a]s a result of Jisan Group, LLC's Members all being citizens of the State of New Jersey, Jisan Group, LLC is a citizen of New Jersey." (Doc. 1 at ¶ 12).

1994). As the Defendants' corporate office is located in New York, Defendants argue that the events and omissions giving rise to the instant breach of contract claim took place solely in New York, and possibly China.

In *Bro-Tech Corp. v. Purity Water Co. of San Antonio, Inc.*, it was determined that a contract allegedly "entered and approved" in Pennsylvania, but breached in Alabama, was not properly subject to venue in the Eastern District of Pennsylvania. No. 08-371, 2008 WL 1757922 at *3 (E.D. Pa. April 16, 2008). The plaintiff manufacturer had filed a breach of contract claim against the defendant for failing to pay for what the defendant claimed was a defective product. *Id.* at *1. That court found it notable that the product in question was ordered, received, and presumably manufactured in a locale other than Pennsylvania, providing a connection too attenuated between the forum and the breach. *Id.* at *3. That court then dismissed for improper venue, finding that since the product failed to perform in Alabama, the ultimate breach giving rise the claim did not lie in Pennsylvania. *Id.* at *3-4.

Even more pertinent to the instant dispute, *Whipstock Natural Gas Services, LLC v. Trans Energy, Inc.* concerned a breach of contract (and an unjust enrichment) claim by a Pennsylvania LLC against a West Virginia corporation. No. 02:08-cv-1084, 2008 WL 4287158 at *1 (W.D. Pa. Sept. 17, 2008). Exactly like the instant matter, that plaintiff argued that the defendant violated their contract through failing to pay, but also in failing to provide information as to the disputed invoices. *Id.* at *2. Moreover, the plaintiff argued that venue was appropriate as "it negotiated, prepared and executed the contract via telephone and email in Pennsylvania." *Id.* at *4. However, that court disagreed, finding the contract was signed, and was therefore executed, in West Virginia. *Id.* Considering the other factors, that court held that the performance of the contract–drilling operations–would have

been performed in West Virginia, and that the alleged breach occurred in West Virginia as well. *Id.* at *5. That court explained: "the 'omission' or failure to remit payment occurs where the payor is located, even though the result of the omission (i.e., non-receipt of payment) occurs in Pennsylvania." *Id.*

Finally, where a group of Pennsylvania investment firms brought, among other claims, a breach of contract action against several out of state banks, that court held that since the breach–the failure to remit payments–occurred out-of-state, venue could not be had in the Eastern District of Pennsylvania. *Archway Ins. Services, LLC v. Harris*, No. 10-5867, 2011 WL 2415168 at *7 (E.D. Pa. June 15, ,2011). The fact that contractual discussions had occurred within the Eastern District did not alter that court's ultimate determination that "a 'substantial part' of the events giving rise to plaintiffs' claims against the Bank Defendants did not occur in the Eastern District of Pennsylvania."[2]  *Id.* Additionally, any economic harm suffered by the plaintiffs within the forum was deemed irrelevant  "to establish that a "substantial part" of the events giving rise to the claims occurred in this district." *Id.* (citation omitted).

In the instant case, it is clear that the alleged contractual breach occurred in New York, and that the majority of the work within the purview of the alleged contract occurred there as well. In support of retaining venue in the Middle District, the Plaintiff alleges that "Defendant Forehand made many trips to Pennsylvania" where he worked closely with the Plaintiff to perform services that were "integral" to UBU's business model. That, since "all

---

[2]*Harris* specifically concerned the operation of 28 U.S.C. § 1391(b)(2), which applies to actions not founded solely on diversity of citizenship. However, for the purposes of the Court's analysis of 28 U.S.C. § 1391(a)(2), the language is identical: "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."

of the critical planning and production elements to provide the defendants with the work to do for [UBU] were out of Pennsylvania," that "the events and omissions giving rise to [UBU's] claims were substantially performed in Pennsylvania." (Doc. 12 at 2-3). The Court does not find such averments sufficient for the foundation of venue. As in *Bro-Tech* and *Harris*, *supra*, this argument conflates the underlying dealings between the parties with the actual breach of the contract, and such background transactions do not constitute the substantive events or omissions giving rise to the Plaintiff's claim.

Instead, the terms of the alleged contract pertain not to Jisan Group's actions with UBU in Pennsylvania, but to their third-party dealings. The Amended Complaint alleges that the Defendants were hired as consultants to "deal directly with factories, quality control specialists and others in China to facilitate the manufacturing, coordinate shipping, and assure quality control of clothing." (Am. Compl. at ¶ 8, Doc. 5). Moreover, the terms of the purported agreement explicitly state that Defendants' "service to UBU is basically selling [its] labor, expertise and factory management." (Doc 5-2 at 1, Ex. 1). As such, the majority of these actions specified in the alleged contract would have been executed from the Defendants' office in New York.

Most notably, the heart of the Plaintiff's claim, the apparent breach of contract, is based on the Defendants' failure to adequately perform these tasks–a breach that materialized in New York. (Am. Compl. at ¶¶ 23-24, Doc. 5). Specifically, Plaintiff claims that the Defendants failed to compensate the Plaintiff for their advanced payments of $27,458.52, and failed to adequately communicate instructions with the Chinese manufacturers, resulting in non-conforming merchandise at an additional loss of $148,619.83. (Id. at ¶¶ 20-24). As noted in *Whipstock* and *Harris*, *supra*, the refusal to

8

remit payment is a harm located in the venue of the payor, which in this action points to New York. 2008 WL 4287158 at *4. Additionally, the failure to communicate with the foreign manufactures is clearly a breach that occurred in New York as this work was allegedly performed at Jisan Group's office in New York. (Aff. of Robert Forehand at ¶ 7, Doc. 2-3). As these are the specific harms the Plaintiff alleges, the Court concludes that they were squarely located in New York. The fact that Plaintiff admits that such work was done "by both parties in Pennsylvania and New York at their respective locations simultaneously via telecommunications and post," only substantiates the notion that the appropriate venue is New York. (Doc. 12 at 4).

Against this conclusion, UBU expounds that "it was defendants [sic] work in Pennsylvania that cause the events and omission[] which gave rise to the present action." (Doc. 12 at 4). In particular, they claim that the Defendants engaged in "critical planning" in the Middle District, assisting on the design and pricing committees in an effort to produce a product that would be competitive in the marketplace. (Doc. 12 at 2). However, there is absolutely no indication that such critical planning coincided in any way with the breach of the contract for which they seek redress.

The one factor pointing venue towards the Middle District of Pennsylvania is the possibility that the contract could ultimately be determined to have been negotiated and formed within this jurisdiction. Specifically, Plaintiff claims that the terms of the contract were discussed in Pennsylvania, and were confirmed in a later email sent by the Defendants from an unknown location, presumably New York. However, in determining the "place of contracting," Pennsylvania courts look to the "last act to bring the agreement into legal effect." *Frankel v. Johns-Manville Corp.*, 257 F.2d 508, 510 (3d Cir.1958). From the

9

record, it is not clear where such last act occurred in this case, or whether a binding agreement was ever even formed between the parties. However, as *Harris*, *supra*, points out, contractual discussions occurring within the district are not sufficient to base venue in that jurisdiction where the breach occurred in a separate forum. 2011 WL 2415168 at *7. Therefore, from the record, the Court determines that it cannot be said that a substantial part of the events or omissions giving rise to the claim occurred in the Middle District of Pennsylvania.

### C. Transfer Under 28 U.S.C. § 1406(a)

As the Court has determined that venue is improper in the Middle District of Pennsylvania, Section 1406 directs the Court to "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

From the above analysis, it is clear that this action could have been brought in the Southern District of New York as "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a). Plaintiff specifically requests that, based upon its good faith filing in Pennsylvania, the action be transferred instead of dismissed. As the Court finds that transferring this case would be in the interest of justice, the Court will transfer the matter to the Southern District of New York.

### III. CONCLUSION

For the reasons stated above, the Court concludes under 28 U.S.C. § 1391(a) that venue is improper in the Middle District of Pennsylvania.  Therefore, in the interest of justice, the Court will transfer the mater to the Southern District of New York, pursuant to 28 U.S.C. § 1406(a).

An appropriate order follows.


| | |
|---|---|
| October 27, 2011 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo |
| | United States District Judge |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

THE UBU CLOTHING CORPORATION,

    Plaintiff,

ROBERT FOREHAND and JISAN GROUP, LLC

    Defendants.

CIVIL ACTION NO. 3:11-CV-910

(JUDGE CAPUTO)

## ORDER

**NOW**, this 27th day of October, 2011, **IT IS HEREBY ORDERED** that:

(1) Defendants' Motion to Dismiss / Motion to Transfer (Doc. 9) is **GRANTED** as to their Motion to Transfer, but **DENIED** as to their Motion to Dismiss.

(2) Defendants' Motion to Dismiss / Motion to Strike / Motion to Transfer (Doc. 2) is **MOOT**.

(3) This action will be **TRANSFERRED** to the Southern District of New York pursuant to 28 U.S.C. §1406(a).

(4) The Clerk of the Court shall mark this case **CLOSED**.

                                                              /s/ A. Richard Caputo
                                                              A. Richard Caputo
                                                              United States District Judge